## MARTIN v. STATE.

(In Banc.   May 13, 1946.)

[26 So. (2d) 169.   No. 36067.]

B. B. **Allen**, of Indianola, Bidwell Adam, of Gulfport, and **Ralph L. Landrum**, of Jackson, for appellant.

146

**Greek L. Rice**, Attorney General, by **R. O. Arrington**, Assistant Attorney General, for appellee.

152

Argued orally by **Bidwell Adam** and **B. B. Allen**, for appellant, and by **R. O. Arrington**, for appellee.

**Griffith, J.,** delivered the opinion of the court.

On and for some time before December 12, 1941, appellant was and had been associated with a firm in Jackson, whose principal business was in buying and selling mineral leases. On that day appellant went to the home of the prosecuting witnesses, Mr. and Mrs. Lane Chandler, in Indianola, and stated to them that he and his two associates in the firm aforesaid had purchased a mineral lease on the Heath lands in Madison County consisting of 240 acres, described as the NE¼ and E½ of NW¼ Sec. 33, Tp. 11 N., R. 3 East, and that he and his said associates had paid therefor the sum of $4,000—each of them furnishing one third of the purchase price. Appellant further stated to the prosecuting witnesses that he and his associates had determined to sydicate the lease by dividing it into six undivided shares and to take into it three addi-

tional parties, each with an undivided one-sixth interest, on terms of equal cost as between appellant and his associates and the vendees; and that in view of the fact that appellant had had a previous transaction with the Chandlers and felt an interest in them, he would offer them one of the sixths at one sixth of the cost of the lease, or $666.40.

The Chandlers had had no experience in the oil business, knew little about mineral leases, and had not been upon or near the land in question; but did know from current happenings that there was considerable activity in the production and search for oil in Madison and the adjoining counties to the west. They testified that in view of the fact that appellant and his associates were experienced in the business and knew the values of leases and, according to the statement by appellant, had backed their knowledge by actually paying out their own money for the lease, they were induced, in reliance on appellant's statement, and because thereof, to accept his offer, and they did so by delivering to him their check for $666.40, payable to appellant. This check was endorsed by appellant to one of his associates who collected the money on it on its due presentation three or four days later.

All the foregoing is shown by the State's witnesses; and it was further shown by them (1) that as a matter of fact appellant and his associates did not have a lease on the Heath lands on December 12, 1941, and did not obtain same until December 16th; (2) that, as a matter of fact, appellant and his associates had not paid out any money whatever for the lease on December 12, 1941; (3) that when later they did obtain the lease, they paid only $1200 for it, and not $4000; and (4) that the lease was not then worth any more than the $1200. The prosecuting witnesses admit that on December 22, 1941, appellant and his associates conveyed to the former the one-sixth interest which has been mentioned.

Appellant introduced in rebuttal ample testimony which, if believed by the jury, would have shown that the one-sixth interest conveyed to the prosecuting wit-

nesses was actually and fairly worth at the time of the transaction the sum paid by the prosecuting witnesses for it.

Upon the indictment charging him with obtaining money under false pretenses, appellant was convicted, and on this appeal assigns many errors, one of which is that he should have had his requested charge of not guilty, and this on three grounds: (1) That representations as to the amount paid for property is in effect an averment of opinion as to its value and is not a statement of fact sufficient to support a charge of false pretenses; (2) a conviction cannot be sustained on a charge that appellant obtained money when he received only a check; and (3) because the proof shows that one of his associates, and not appellant, obtained the money.

(1) In 2 Wharton Crim. Law (12 Ed.), p. 1715, it is stated in a note that false representation by vendor of price paid for real estate is not actionable. The leading cases so holding were reviewed in Dorr v. Cory, 108 Iowa 725, 731, 78 N. W. 682, wherein the contrary conclusion was reached, with which other cases have agreed. Undoubtedly, there is a considerable diversity of opinion on the precise point, as is disclosed by the cases cited in 37 C. J. S., Fraud, Sec. 57, pp. 342, 343, and 23 Am. Jur., pp. 836, 837; but it is generally held, as may be seen from a number of the cases cited in the notes 66 A. L. R., p. 193, that where an owner of land has agreed with another or others that the latter, as vendees of interests therein, shall be admitted on equal terms with the vendor based upon cost, an intentional misrepresentation by the vendor as to the cost is a statement of fact and not of opinion, and if by the falsity the vendee is induced to pay more than his proportionate share of the cost, the vendor is guilty of actionable fraud, from which it follows that if thereby the amount paid by the vendee is distinctly more than the fair or reasonable value of the property at the time a criminal charge of false pretense may be supported thereby. We concur in that view, which renders it un-

necessary to pursue the point in its broader aspects, adding, as we have done, that in order to sustain the criminal charge, it must be shown, and beyond a reasonable doubt, not only that the false statement of fact was knowingly made and was reasonably relied on, but that the property at the time was clearly not worth the amount paid for it, the rule in this State being, as the Attorney General concedes, that the purchaser must have been actually defrauded. Simmons v. State, 160 Miss. 582, 135 So. 196.

(2) In his contention that proof that a check was received and cashed in due course will not sustain an indictment which charged the receipt of money, appellant cites Hales v. State, 186 Miss. 413, 191 So. 273, wherein the opinion, not as decision but as a part of the discussion, so states and cites McKenney v. State, 17 Ala. App. 117, 82 So. 565. The Supreme Court of Alabama has recently reconsidered the general subject, Simmons v. State, 242 Ala. 105, 4 So. (2d) 905, and looking to the reasoning displayed in that case, we have concluded that so far as concerns a charge of the nature here before us, a bank check cashed in due course is for all practicable purposes, under the business customs of the day, the equivalent of the money itself, being the immediate instrumentality by which the money is obtained, and that appellant's contention on the point should be rejected. See also, as bearing upon the point, Simmons v. State, 165 Miss. 732, 744, 141 So. 288.

(3) What has been said in the foregoing paragraph disposes of the contention made by appellant that he did not receive the money, and that it was actually obtained by one of his associates. Appellant received the check which was endorsed by him to an associate, who cashed it, and this was enough so far as appellant was concerned.

Appellant was not entitled to the peremptory charge, but the judgment and sentence must be reversed and vacated because of the violation by the prosecution of Section 1691, Code 1942, which prohibits comment by counsel for the State on the failure of accused to testify.

The special bill of exception recites that "the defendant further objected to the argument of J. M. Forman who closed the argument for the State when he said that the evidence was undisputed that Martin told the Chandlers that he and Shortridge and another had bought the property in question for $4000 when in truth and in fact he had paid only $1200 for it; and again it was undisputed by any evidence on this case that Martin told the Chandlers that he and his associates had paid $4000 for the property; and further Mr. Forman stated in his closing argument to the jury that it was undisputed by any evidence that Martin told the Chandlers that they were getting up a syndicate so that each member would own a 1/6 interest in the 240 acre tract and that he and his associates had each then and there put up the sum of $666.40," etc.

Inasmuch as the appellant was the only person in a position to make the denials, the absence of which was being brought so prominently before the jury, the quoted statements by the prosecuting attorney "could have meant nothing less than a comment on appellant's failure to testify." Winchester v. State, 163 Miss. 462, 142 So. 454, 457. We have recently reviewed all our cases on this subject in Lambert v. State, 199 Miss. 790, 25 So. (2d) 477, and there is nothing to add to what was there stated except to say that the guilt of appellant is not here so manifest as that no other verdict could have been honestly returned, and there are two reasons for this other than the substantial conflict in the evidence on the issue of the actual value of the interest at the time.

The special bill of exceptions shows also that the prosecuting attorney appealed to the jury to give particular consideration in behalf of the Chandlers as people of high standing in the county and against appellant a stranger, but as this will probably not happen on a new trial, we pretermit it. Likewise, and for the same reason, the complaint about the tales jurors, about forcing a pursuit of the trial at night, the failure to wait a few

moments for an important witness, the comment of the trial judge that the only issue in the case was whether appellant and his associates paid $4000 or only $1200, and the asserted conflict in the instructions. We may say, however, that, in our opinion, instructions numbered 6, 7, and 8 were correctly refused by the court, because not drawn with entire accuracy in verbiage.

Reversed and remanded.

### DISSENTING OPINION.

**Sydney Smith, C. J.,** delivered a dissenting opinion.

The judgment of the court below should not be reversed, because the prosecuting attorney, in his argument, calls the attention of the jury to the fact that the evidence was undisputed "that Martin told the Chandlers that he and Shortridge and another had bought the property in question for $4000 when in truth and in fact he had paid only $1200 for it" for two reasons: (1) It is manifest from the evidence that the appellant is guilty of the crime charged against him, and (2) this comment should not be held to refer to the appellant's failure to testify in his own behalf. The prosecuting attorney had the right to call the jury's attention to the fact that the evidence of none of the witnesses who testified in the case disclosed any dispute as to what Martin told the Chandlers—in fact, he could hardly have argued the case intelligently and effectively without so doing. This decision, together with that of Lambert v. State, 199 Miss. 790, 25 So. (2d) 477, makes it "almost impossible for a prosecuting attorney to safely argue a criminal case to the jury when the defendant therein fails to testify."

**Alexander, J.,** concurs in the foregoing dissent upon the first ground mentioned therein.